MATTER OF G——

In DEPORTATION Proceedings

A-7444373

*Decided by Board May 28, 1959*

**Act of September 11, 1957, section 7—Eligibility, parent-child relationship.**

An alien parent of an adult United States citizen child is a "parent" within
the definition of section 101(b)(1) and (2) of the Immigration and Nation-
ality Act and, therefore, eligible to qualify for relief under section 7 of the
Act of September 11, 1957. (Overrules *Matter of G——*, A-7444373, Int.
Dec. No. 954.)

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1), 1952 ed.]—
Excludable at entry as an alien who was not a nonquota immigrant
as specified in his visa.

## BEFORE THE BOARD

**Discussion:** The case comes forward pursuant to the provisions
of 8 CFR 3.1(h)(1)(iii) requesting referral to the Attorney Gen-
eral for review.

The record relates to a native and citizen of Hungary, born
December 23, 1897, who first entered the United States for perma-
nent residence in 1913. He became a naturalized citizen on October
23, 1922. The respondent made several trips to Czechoslovakia, the
last absence being from May 1939 until his return to the United
States on March 28, 1950. On October 7, 1946, the respondent re-
fused an opportunity for repatriation at the American Consulate in
Prague, Czechoslovakia, and thereupon lost his American citizenship
by expatriation through residence abroad.

The respondent's first wife had died in 1924 and his second wife
whom he married in 1926 became a naturalized citizen in 1928. The
respondent's relationship with his second wife was not harmonious
and after a number of separations the wife secured a divorce on
January 24, 1945, in the State of New Jersey while the respondent
was in Czechoslovakia, service being made by publication. Subse-
quent to the divorce, she paid a short visit in 1947 to the respondent
in Czechoslovakia. The evidence indicates respondent's awareness
of the fact that his wife had divorced him. Despite the divorce,

355

the second wife, a United States citizen, filed a visa petition in the respondent's behalf as a result of which he obtained a nonquota visa under section 4(a) of the Immigration Act of 1924 from the American Consulate at Prague, Czechoslovakia, on December 12, 1949, and was duly admitted on March 28, 1950. In connection with a petition for naturalization in 1955, the respondent testified that he had been separated from his wife for the past 15 years but did not disclose the fact of divorce, claiming he did not believe that she had divorced him.

In deportation proceedings the special inquiry officer denied all discretionary relief and ordered deportation on the charge contained in the order to show cause. On appeal, the Board on May 13, 1958, sustained the finding of deportability, but in view of his 30 years' residence in the United States and the fact that he had a citizen son in this country ordered the proceedings reopened to permit the respondent to establish eligibility for relief under the last clause of section 7 of the Act of September 11, 1957 (Public Law 85-316), and granted advance permission to reapply for admission after deportation. A reopened hearing was given the respondent, and the special inquiry officer in a decision dated June 16, 1958, found the respondent ineligible for relief under section 7 of Public Law 85-316 on the theory that the respondent was not a "parent" as defined in section 101(b)(1) and (2). This conclusion was based on the fact that respondent's son was *over* 21 years of age, whereas the definitions of "child" and "parent" in section 101(b)(1) and (2) of the Immigration and Nationality Act refer to the child as being an unmarried person *under* 21 years of age. By order dated September 25, 1958, the Board affirmed the finding of the special inquiry officer without discussion. The Board merely adopted the language of the special inquiry officer who quoted section 14 of Public Law 85-316 which provides that except as otherwise specifically provided in this Act, the definitions contained in subsection (a) and (b) of section 101 of the Immigration and Nationality Act shall apply to section 7 of this Act, and then adopted the conclusion of the special inquiry officer that since there was nothing "otherwise specifically provided," the definitions of section 101(b)(1) and (2) of the Immigration and Nationality Act controlled the meaning of the word "parent" as used in section 7 and that the definition stated that the relation of parent exists only when the offspring is an unmarried person under 21 years of age. Upon reconsideration, a further study of the statutory language and of the legislative history leads us to the conclusion that the strict interpretation of the special inquiry officers should be modified.

The term "parent" is defined in relation to the term "child" in section 101(b)(1) and (2) of the Immigration and Nationality Act and reads as follows:

356

(1) The term "child" means an unmarried person under twenty-one years of age who is—

(A) a legitimate child; or

(B) a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred; or

(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

(D) an illegitimate child, by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its natural mother;

(E) a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years: *Provided*, That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act.

(2) The terms "parent," "father," or "mother" mean a parent, father, or mother only *where the relationship exists by reason of any of the circumstances set forth in (1) above.* (Emphasis supplied.)

The Department of State, in a case involving an illiterate mother of a twenty-nine year old American citizen, held that the mother was a "parent" and entitled to the exemption from illiteracy provided in section 212(b) on the ground that the language contained in section 101(b)(2) which reads "circumstances set forth in (1) above" refers to circumstances leading to a child-parent relationship as specified under subparagraphs (A), (B), (C), (D), or (E); namely, a legitimate birth, a stepchild relationship, a legitimated child, illegitimacy in relation to the mother, or adoption. The word "circumstances" as used in section 101(b)(2) does not relate to the words "unmarried" or "under twenty-one years of age" as used in section 101(b)(1) of the act. (Note 7, Revised August 1, 1958, Visa Handbook 22 CFR 42.1).

In view of the differing interpretations, the Commissioner of the Immigration and Naturalization Service requested that the conflict be resolved. The Commissioner, while not expressing any views on the matter, may be regarded as tacitly agreeing with the interpretation reached by the special inquiry officer, since the Service Representative, in oral argument on July 24, 1958, was content to rest on the record.

In a communication dated May 6, 1959, the Department of State expanded its views expressed in the note referred to above. The Department agreed that the terms "parent" and "child" are interrelated and that the definition of a "child" as contained in section 101(b)(1) of the act is a limitation upon the meaning of the term "parent." It did not agree, however, that an alien is a "parent" only where the person through whom such alien claims an exemp-

tion, benefit, or status under the immigration laws is unmarried and under twenty-one years of age. This view is based on a belief that the crucial word in the definition of "parent" is *relationship*. With respect to the exemption of a parent from the illiteracy test under section 212(b), the State Department resolved the doubt in favor of that interpretation which tended to give effect to the legislative purpose in providing the exemption in the first place, namely, unification of the family. Since the principal consideration which led to the enactment of the Act of September 11, 1957 was the unification of families, an interpretation of the word "parent" as used in section 7 of the Act of September 11, 1957 which tended to keep members of families separated would seem to be inconsistent with the legislative purpose. In sections 5 and 6 of the Act of September 11, 1957, Congress granted discretionary relief to any alien who "has a son or daughter who is a United States citizen or an alien lawfully admitted for permanent residence * * *." The words "son" and "daughter" are broader than the word "child" and, therefore, section 7 of the Act of September 11, 1957, which deals with "parents" of citizens or permanent resident aliens, must be given a more restrictive application than sections 5 and 6, a result which it was doubtful Congress ever contemplated. The Department of State pointed out that if only an unmarried alien under twenty-one years of age could benefit under the provisions of section 202(a)(4) (which permits an alien born within any quota area in which neither of his parents was born and in which neither of his parents had a residence at the time of such alien's birth to be charged to the quota area of either parent), the legislative purpose would be defeated since this rule of quota chargeability was intended primarily for the benefit of adult aliens. Similarly, the adoption of the strict limitation as to child as an unmarried person under 21 years of age in relation to the various categories would, if applied to the term "parent," limit section 203(a)(2) of the Immigration and Nationality Act to *unmarried* adult United States citizens, since that section refers to parents of citizens over twenty-one years of age and makes no mention of their marital status which is referred to in the definition under section 101(b)(1).

There can be little doubt that the legislative history of the Immigration and Nationality Act clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States citizens and immigrants united.[1] In waiving the excluding provisions of existing law relating to persons afflicted with tuberculosis, the Congress desired that this waiver be extended in behalf of close

---

[1] *United States Code Congressional and Administrative News*, 85th Congress, 1st Session, 1957, pp. 20, 21.

relatives of United States citizens or aliens admitted for permanent residence in the belief that enactment of this section, under which families of United States citizens and of aliens lawfully residing in the United States would be given an opportunity to be reunited, was not contrary to the public interest, while it would greatly contribute to the stability of the home life of many American and immigrant families directly affected. Similar considerations were expressed in granting discretionary authority in waiving grounds of exclusion in the cases of spouses, parents or children (including minor adopted children) of citizens or lawful resident aliens and in providing for leniency for those applications made by close relatives of United States citizens and permanent resident aliens.[2]

It is, therefore, apparent from the legislative history that Congress had in mind the *family unit* as such, that is, *close relatives* of United States citizens and permanent resident aliens, which it desired to keep together in order to alleviate the hardship of enforced separations. Of course, as to the term "child," the restrictive limitations of age and marital status were kept but the categories of relationship were widened to include illegitimate stepchildren, illegitimate children in relation to the mother and adopted children. While for immigration purposes a "child" ceases to be a child even if it fits into the various categories when it reaches the age of twenty-one or becomes married, the parent, once the required relationship has been established, always remains a parent. This conclusion is warranted not only by a study of the legislative history but from a careful reading of the words of the statute. In view of the conclusion reached, the conflict has been resolved and the need for certification to the Attorney General no longer exists.

The meritorious factors in the case has already been dwelt upon. The respondent has already been granted advance permission to reapply for admission after deportation. In addition, we will authorize voluntary departure and preexamination. In preexamination proceedings, the respondent will be eligible for consideration of the relief contained in section 7 of the Act of September 11, 1957.

**Order:** It is ordered that the outstanding order and warrant of deportation be and the same is hereby withdrawn.

*It is further ordered* that the alien be permitted to depart from the United States voluntarily without expense to the Government, to any country of his choice, within such period of time, in any event not less than 90 days, and under such conditions as the officer-in-charge of the district deems appropriate.

*It is further ordered* that preexamination be authorized, conditioned upon a showing by the alien that he can obtain the prompt issuance of an immigrant visa.

---

[2] *Congressional Record*, Vol. 103, No. 157, August 28, 1957, pages 14789–14790.